UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION
IN ADMIRALTY

| | | |
|---|---|---|
| Thunderbolt Marine, Inc. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No.: 2:23-cv-01044-DCN |
| | ) | |
| P/V HAMPTON QUEEN (O.N. 1093861) and P/V CAROLINA BELLE (O.N. 933237), their engines, boilers, tackle, appurtenances, etc., *in rem*, and Tour Management Services, Inc., d/b/a Charleston Harbor Tours, Hampton Queen, LLC, and Harbor Cruises of Charleston, LLC, *in personam*, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | (NON-JURY) |

PLAINTIFF'S VERIFIED COMPLAINT

COMES NOW Thunderbolt Marine, Inc. ("Thunderbolt Marine"), Plaintiff in the above-captioned action, and, complaining of Defendants P/V HAMPTON QUEEN, P/V CAROLINA BELLE, Tour Management Services, Inc. d/b/a Charleston Harbor Tours ("TMS"), Hampton Queen, LLC, and Harbor Cruises of Charleston, LLC (collectively "Defendants"), shows this Honorable Court as follows:

JURISDICTION

1. This case involves the breach by Defendants of a maritime contract for vessel repairs and other necessaries provided to the passenger vessels HAMPTON QUEEN (*Official No. 1093861*) and CAROLINA BELLE (*Official No. 933237*) (collectively the "Vessels").

2. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Plaintiff invokes the original admiralty jurisdiction of this

1

Honorable Court pursuant to 28 U.S.C. § 1333(1). In addition, subject matter jurisdiction in this Honorable Court is based upon the Commercial Instruments and Maritime Lien Act, 46 U.S.C. §§ 31301-31343 ("CIMLA"), and is brought under Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules").

3. This case is governed by Rule C of the Supplemental Rules, CIMLA, the General Maritime Law of the United States, and laws supplemental thereto and amendatory thereof.

4. Upon information and belief and at all times material hereto, Defendant Vessels were and are U.S. flagged and in navigation upon the navigable waters of the United States, and venue is proper because the Vessels are, or will be during the pendency of this litigation, within the Charleston Division of the District of South Carolina.

5. Thunderbolt Marine is a corporation organized under and existing by virtue of the laws of the State of Georgia with a principal place of business at 3124 River Drive in Thunderbolt, Georgia.

6. Upon information and belief, Defendant P/V CAROLINA BELLE is owned by Harbor Cruises of Charleston, LLC, a limited liability company organized under and existing by virtue of the laws of the State of South Carolina with a principal place of business within the jurisdiction of this Honorable Court.

7. Upon information and belief, Defendant P/V HAMPTON QUEEN is owned by Hampton Queen, LLC, a limited liability company organized under and existing by virtue of the laws of the State of Delaware.

8. Upon information and belief and at all material times hereto, Defendant TMS is a corporation organized under and existing by virtue of the laws of the State of South

Carolina and doing business as "Charleston Harbor Tours" with a billing address at 11 Isabella Street, PO BOX 21360, Charleston, SC 29413, and an office address of 10 Wharfside Street in Charleston, South Carolina.

9. Upon information and belief, Defendants TMS, Hampton Queen, LLC, and Harbor Cruises of Charleston, LLC are operators of vessels for passenger tours in Charleston, South Carolina.

## FACTS

10. Thunderbolt Marine operates a full-service vessel construction and repair facility in Thunderbolt, Georgia providing services to both private and government vessels ranging in size from small yachts to large ships.

11. Since early 2021, Defendants, on their behalf and on behalf of the Vessels and their owners, has contracted with Thunderbolt Marine to perform repairs on several different vessels that Defendants operates for its tour business.

12. For each of these repair contracts, Thunderbolt Marine and Defendants have agreed to contract terms related to the repairs and payment. For each repair contract, the Agreement was made up of three documents entitled, Deposit Invoice, Work Authorization Terms and Conditions ("Work Authorization"), and Budget Proposals (these three documents are collectively referred to herein as the "Agreement").

13. During this course of dealing, the repair transactions were contemplated to, and for the most part did, proceed in the following general manner:

    a. Thunderbolt Marine would initially send Defendants a Deposit Invoice requesting a deposit prior to the start of work on each vessel to secure space for the vessel at Thunderbolt Marine's repair yard.

b. Pursuant to the pertinent terms of the Deposit Invoice, all outstanding payments would be due upon the completion of the work and, if credit was extended, the balance would be due upon presentation of the invoice to Defendants.

c. Because Thunderbolt Marine was working on multiple vessels for Defendants, it agreed that when the repairs to one vessel where complete, Defendants could retake possession of that vessel if: (i) Defendants paid at least 50% of the outstanding bill; and (ii) at least one vessel continued to remain at Thunderbolt Marine.

d. Next, the Parties agreed to a Budget Proposal and Work Authorization for each vessel which was signed by Defendants' representative and returned to Thunderbolt Marine.

e. Each Budget Proposal stipulated that the Work Authorization was a part of the Agreement and provided, in part, that "[i]nvoices must be paid in irrevocable funds and payment received prior to vessel's launch and departure."

f. The Work Authorization provided, *inter alia*, procedures for handling billing and work-related disputes, a delinquency charge of 1.5% for unpaid balances after 30 days, reimbursement of attorneys' fees and costs, a security interest in the vessel, and that "[i]n no event shall the vessel be removed or to be deemed in possession of the Customer until such time as Company has been paid all amounts due…."

g. As the work proceeded, Thunderbolt Marine issued additional Budget Proposals to identify the next steps in each project, and each Budget Proposal was signed by the vessel representative or confirmed by email with Defendants' representative.

h. Upon completion of the work, Thunderbolt Marine would invoice Defendants for the balance of the cost of the work on the vessel.

  i. Joe Ramsey, project manager for Thunderbolt Marine, and Capt. Jimmy Billups, of TMS, were present onsite for the majority of the time the vessels were being repaired.

The CAROLINA BELLE Repair

14. On or about November 29, 2021, Thunderbolt Marine emailed Capt. Dave Whanger, the Vice President of Operations at TMS and authorized representative of the CAROLINA BELLE, a deposit invoice for $15,000.00 to secure space for the P/V CAROLINA BELLE with services to begin either in December 2021 or early 2022, a true and accurate copy of which is attached hereto as Exhibit A.

15. The significant scope of work included replacement of the engines; extensive replacement of sections of the steel hull, required by the U.S. Coast Guard due to severe hull degradation; shaft work; bottom and topside painting; and other miscellaneous work.

16. Defendants authorized the delivery of P/V CAROLINA BELLE, and on or about January 6, 2022, the vessel was hauled out for repair at Thunderbolt Marine.

17. The following day, Capt. Whanger signed the initial Budget Proposal and Work Authorization as the "Vessel's Authorized Representative", copies of which are attached hereto as Exhibits B and C, respectively.

18. As the work progressed, at least 16 additional Budget Proposals detailing the scope of work were issued by Thunderbolt Marine and signed or confirmed by email by Capt. Whanger. In August of 2022, before Thunderbolt Marine had finished the work on the vessel, TMS informed Thunderbolt Marine that it needed to take the CAROLINA BELLE back to South Carolina.

19. Defendants removed the CAROLINA BELLE from Thunderbolt Marine without paying the remaining balance of their repair bill within the time required by the Agreement.

20. The outstanding balance for repair of the CAROLINA BELLE is approximately $26,717.86, plus interest continuing to accrue at 1.5% per month, attorneys' fees and costs, and *in custodia legis* expenses.

The HAMPTON QUEEN Repair

21. In February 2022 while the repairs on the CAROLINA BELLE were ongoing, Defendants authorized the delivery of the P/V HAMPTON QUEEN to Thunderbolt Marine for repair.

22. The scope of work generally included replacement of the engines, shaft work, painting, extensive steel replacement, and other miscellaneous work. At the request of Defendants, Thunderbolt waived its requirement for a deposit for P/V HAMPTON QUEEN and instead relied on Defendants' agreement that it would not remove the vessel prior to paying all outstanding invoices.

23. On or about March, 2022, Defendants' representative Capt. Whanger signed the initial Budget Proposal for repair of the P/V HAMPTON QUEEN and Work Authorization, copies of which are attached hereto as Exhibits D and E.

24. As the work continued, at least 19 Budget Proposals were issued and signed or confirmed by email by Capt. Whanger.

25. On January 4, 2023, Defendants' representative Capt. Jimmy Billups, arrived at Thunderbolt Marine, to discuss the remaining repair with Joe Ramsey and mentioned that Defendants would be authorizing a bank wire transfer to pay its outstanding repair invoices.

26. Joe Ramsey was preparing to start work on the final job when he noticed that the HAMPTON QUEEN was getting underway. Without notice to Thunderbolt Marine, and

in breach of the Agreement, Defendants removed the vessel from Thunderbolt and returned to Charleston without paying the remaining balance in full.

27. Despite having approved the specific scope of work performed on the Vessels and the cost estimates for the repairs without complaint, shortly after its unauthorized removal of the HAMPTON QUEEN, Defendants emailed Thunderbolt Marine a letter noting their dissatisfaction with the work on the Vessels and its cost and purporting to unilaterally reduce their outstanding bill from approximately $580,000.00 to $350,000.00.

28. Defendants then unilaterally transferred that amount, via bank wire, to Thunderbolt Marine's account and stated that such payment amounted to a satisfaction of the total outstanding debt.

29. On or about January 18, 2023, Thunderbolt Marine replied to Defendants, in part, expressly rejecting that $350,000.00 was a full accord and satisfaction of the outstanding balance and demanding full payment for the repairs performed on the Vessels.

30. Thunderbolt Marine applied the $350,000.00, received via bank wire transfer from Defendants, to the outstanding balance for repair of the HAMPTON QUEEN, leaving a remaining balance of approximately $255,946.60, plus interest continuing to accrue at 1.5% per month, attorneys' fees and costs, and *in custodia legis* expenses.

FIRST CAUSE OF ACTION
(Breach of Maritime Contract)

31. Plaintiff restates the above allegations as if set forth herein verbatim.

32. At the request of Defendants, Plaintiff offered to perform certain repairs to the Vessels upon certain terms and conditions as set forth in the Agreement (Ex. A – E).

33. Defendants accepted Thunderbolt Marine's offer by having their authorized representative sign the Budget Proposals and the Work Authorizations and by delivering the Vessels to Thunderbolt Marine for the work.

34. Thunderbolt Marine fully and faithfully performed its duties under the Agreement.

35. Defendants failed to perform their duties under the Agreement and materially breached the Agreement in the following ways:

    a. In failing to pay Thunderbolt Marine's repair invoices as agreed;

    b. In failing to comply with the procedure for resolving billing disputes;

    c. In failing to comply with the procedure for resolving repair disputes;

    d. In removing the HAMPTON QUEEN from Thunderbolt Marine's possession without Plaintiff's authorization; and

    e. In other material respects that may be proven at the trial of this matter.

36. Defendants also breached the implied covenant of good faith and fair dealing by materially misrepresenting their intentions in taking possession of the HAMPTON QUEEN without authorization.

37. As a direct and proximate result of Defendants' said material breaches, Thunderbolt Marine has incurred damages of approximately $282,664.46 plus delinquency charges of 1.5% per month on all balances that have remained unpaid for over 30 days, plus attorneys' fees and costs, and *in custodia legis* expenses.

38. As a direct and proximate result of Defendants' said material breaches, Thunderbolt Marine is entitled to a judgment for damages in an amount sufficient to compensate it for its losses stated above, including, without limitation, actual damages, consequential damages, punitive damages, special damages, attorneys' fees as authorized by the Agreement, costs

of this litigation, prejudgment interest, and other amounts that may be proven at trial of this matter or that justice may require.

## FOR A SECOND CAUSE OF ACTION
(Maritime Lien Foreclosure)

39. Thunderbolt Marine restates the above allegations as if set forth herein verbatim.

40. Thunderbolt Marine provided necessaries to the Vessels by performing repairs to the Vessels which were necessary to the accomplishment of their missions and continued function as passenger tour vessels.

41. Thunderbolt Marine submitted invoices for the completed repair work to Defendants in accordance with the terms of the Agreement.

42. Defendants have failed and refused to pay the outstanding amounts due to Plaintiff for the repairs.

43. Pursuant to the terms of the Agreement, Defendants granted Thunderbolt Marine a security interest in the Vessels and promised not to cause the Vessels to be removed until all outstanding invoices had been paid in full.

44. Thunderbolt Marine's provision of necessaries to the Vessels gave rise to maritime liens on the Vessels for the outstanding amounts due to Plaintiff on each account and are enforceable against each Vessel *in rem* under the provisions of 46 U.S.C. § 31341, *et seq.*

45. Thunderbolt Marine is entitled to arrest of the Defendant Vessels, pursuant to Rule C of Supplemental Admiralty Rules, to enforce its maritime liens in the amount of $26,717.86 and $255,946.60 plus interest continuing to accrue at 1.5% per month plus attorneys' fees and costs, *in custodia legis* expenses, and prejudgment interest.

## PLAINTIFF'S PRAYER

WHEREFORE, by reason of the foregoing, Plaintiff prays that summons issue to all Defendants herein; that the Defendants be made to appear and answer the aforesaid matters; that process in due form of law according to the practice of this Court in cases of Admiralty and Maritime Jurisdiction issue against Defendant Vessels, their engines, boilers, tackle, appurtenance, etc.; that judgment be rendered for Plaintiff and against the Defendants, for all actual, consequential, and punitive damages, attorneys' fees, including costs of this litigation, and prejudgment interest, and that judgment be rendered for Plaintiff and against Defendants in an amount as may be proven at trial or which justice requires; that Plaintiff's maritime lien be declared a first priority lien against the Defendant Vessels; that Defendant Vessels, their tackle, appurtenances, and apparel, etc., be sold by the United States Marshal for this District at the Marshal's sale and that the proceeds of the sale be applied first to the payment of *in custodia legis* expenses and next to satisfy Plaintiff's maritime liens; and that this Court award any other amount and grant any other relief which may be proved or that justice may require.

[SIGNATURE PAGE FOLLOWING]

RESPECTFULLY SUBMITTED:

COOPER & BILBREY, P.C.

    By: <u>s/ Albert G. Bilbrey, Jr.</u>
    ALBERT GLEN BILBREY, JR., ESQUIRE
        Federal Court ID 12938
        South Carolina Bar 103799
        agbilbrey@jhcooper.com
    JOHN HUGHES COOPER, ESQUIRE
        Federal Court ID 298
        South Carolina Bar 1387
        State Bar of Georgia 185986
        shiplaw@jhcooper.com
    JOHN TOWNSEND COOPER, ESQUIRE
        Federal Court ID 10172
        South Carolina Bar 76087
        jtc@jhcooper.com
    PO BOX 22513
    Charleston, SC 29413
    843-883-9099; fax 843-883-9335

*Attorneys for Plaintiff,*
*Thunderbolt Marine, Inc.*

March 14, 2023
Charleston, South Carolina

11

## VERIFICATION

PERSONALLY APPEARED Ernest D'Alto, who, under penalty of perjury, deposes, and says:

a) My name is Ernest D'Alto, and I am the Principal for Thunderbolt Marine, Inc.

b) I am over 18, of sound mind, and a resident of the State of Georgia.

c) I have read the foregoing PLAINTIFF'S VERIFIED COMPLAINT and know the contents thereof and the same are true and correct to the best of my knowledge, except as to matters therein stated to be on information and belief, and as to those matters I believe them to be true.

d) The sources of my information and the grounds of my belief are, my personal knowledge, and documents in my possession.

e) The above statements are true and correct under penalty of perjury.

THUNDERBOLT MARINE, INC.

_____
Ernest D'Alto, *its authorized member*

March 14, 2023